This is a case about the mechanics of a mortgage foreclosure, not a case of intentions. Simply put, to do a foreclosure, there has to be a default, and the mortgage has to be accelerated. It doesn't make any difference who paid it. If it was paid, you can't accelerate, therefore, the foreclosure has to be made. You can't foreclose. The security industry for mortgages decided to make their mortgages non-defaultable, which is a benefit to my clients, which means if they make a payment, miss a payment, and the guarantors or the servicers make the payment, there's no default. The trustee owns the mortgage note, so if he is paid for the mortgage note, he cannot authorize a foreclosure. The servicers seem to think they can foreclose when they don't own the note. They're not attorneys, and they seem to think it's an issue of contract that without an acceleration, they can foreclose. That is not true. When you say they can't do these things, are you looking to... Statute. And what statute? The state statute. Are you talking SEC? Are you talking common law? Are you talking... Massachusetts. The suretyship argument? No, I'm not talking... I don't think surety is affected here at all, but the Massachusetts General Law 183, Section 21, 244, Section 14, the statutes on foreclosure, the trust, when there's a securitized mortgage, they have to follow state foreclosure procedures. Their contracts are irrelevant. Those of us who practice in the trenches, so to speak, trying to stop foreclosures, we don't always know who's doing the foreclosure because the servicers get involved, and that's one of the issues in Eaton. And so all we're asking in this court is the amendment that we had suggested in the lower court, which was on page 4355, vermin 172 to 228, be allowed in as an amendment. And we'd like to litigate the issue of whether or not a mortgage that has been paid to the trustee can be foreclosed. And that's the simple issue. That is a claim that is not futile. It's in every single security agreement that I've looked at, and it should be addressed. We shouldn't have foreclosures when there are no accelerations. And that's the nub of my argument. Well, on what do you rely for the proposition that payments made to keep the cash flow going were intended to be payments of the debts due under the note? I don't think intent makes any difference. This is an event. If my mother-in-law paid my mortgage, does that mean my mortgage is not paid? Intent doesn't make any difference. I think that is a pretextual argument that has nothing to do with the statute that says you have to have a default, which allows you to accelerate, which then allows you to foreclose. And if that wasn't their intent, so be it. But that's the effect of what they did. That's the result. You might say we're a third-party beneficiary, but it doesn't mean. Because the only thing at stake here is whether there can be a nonjudicial foreclosure. That's it. It's not about who pays. It's about whether or not they can take property before nonpayment occurs. And payment happens. That's what they designed with their magnificent pooling agreements, which they file many pages long in the Securities Exchange Commission, or in this case at Fannie Mae Drafts. And they're designed to be no default. So if there's no default, you can't accelerate, you can't accelerate, you can't foreclose. And that's as simple as that. Foreclosure is a remedy for taking somebody's property ahead of the time which they had signed on a note. If you had a 30-year note, they wouldn't want to take it in five years. So it's a remedy. It doesn't talk about how much is owed. But if the monthly payment is made, you cannot foreclose. This seems like they didn't realize in doing all this contract work that was the effect of what they did. But if they want to foreclose with that particular note, they can sell it to somebody and say, here's a note and we'll give it to you. You pay for it. And if they don't pay, you can, on your own as an individual note outside of the trust, foreclose. It's a procedural remedy which is not allowed in Massachusetts and, for that matter, in Rhode Island. You have to have a default. And if the securitization is designed not to default, then you can't foreclose. And that's my argument. I think every sink, they don't deny that. The opponents do not deny that. The security agreements say it in black and white. So there's no disputed fact here. Therefore, I would ask this Court to allow the amendment. And I thank you so much for your time. Thank you. Good morning, Your Honors. May it please the Court. My name is Lawrence Krauss. I represent the Federal National Mortgage Association or Fannie Mae. And today I'm presenting on behalf of all the appellees, the trustee defendants, and the servicers who were parties below. I'll be as brief as possible. On the issues before the Court today, the district court did not abuse its discretion when it denied the borrower's motion to amend to seek to add a third amended complaint, when it was clear that this amendment would appear on the same grounds, on the same theories that Mr. McKenna has just described, which they had already admitted to the Court were legally insufficient. And there is no plausible way they could have made their case on the third amended complaint any more than they did on the second amended complaint, which they admitted to the Court was deficient. In addition, the Court did not abuse its discretion when it entered the dismissal of the Hanna case with prejudice. So on both those cases, and as not only the Court below here has found, but as the Central District of California has found on the identical case, and as the District of Rhode Island has found on the identical case, there is no basis for their claims. They should have been dismissed as futile, and the judgments below should be affirmed. I don't think that I need to take the Court, who is well aware of the background of securitization and how the securitized market works through all the basics of that, be happy to answer questions about it. But I think that it's perhaps more useful to just look at the practical ramifications of what the borrower's theories are. If you look at paragraph 206 of their 900-some-odd proposed third amended complaint, they say that they have exposed flaws in the legality of the entire mortgage securitization foreclosure practices, and that if they're right, servicers would no longer forward the advances in question because they would be non-recoverable. So the scope of the challenge that they present would be of some great concern, given the role of the mortgage industry in the world economy, except for the fact that they're simply wrong on their legal theories. And I think that, first of all, they admit that they, you know, by the allegations of the complaint, they admit that they haven't paid their mortgages or their mortgage loans. They admit that the mortgages include a statutory power of sale. And although my brother talks about there being no default, it certainly is the sine qua non of a mortgage loan that you have to make monthly payments. But he's looking at it from the perspective of the mortgagee and saying the mortgagee has got all the money that they were entitled to, and hence there's no default. What do you say to that? There certainly is a default under the note, first of all. And I think you had it right, Judge Cato, when you asked what evidence there is that the payments, the delinquency advances, and those are called advances for a reason, they are not payments on the note. They are not payments on behalf of the borrower's obligation as would be necessary under the UCC. They are payments on a separate instrument, the trust agreements. They are payments that are meant, as you identified, to ensure there's an income stream going back to the certificate holders. And let's remember that's the way this industry works. The certificate holders are making investments, and they're making investments because there is a steady stream of income. That is a relationship that goes to the certificate holders. In fact, it provides the capital that allows these mortgages to be made, these mortgage loans to be made in the first instance. But there's certainly not anything to do with the borrower's obligation. It's certainly not any instance in which the servicers or the trustees have taken over the borrower's obligation, taking over the obligation to pay the borrower's note. Instead, it's a secondary and separate obligation. Do you know what happens in the case of payments have become so late that interest is accruing, sort of penalty interest, if and when that is all collected, what happens to those interest payments under the arrangements here? I don't know that I know that specifically, Your Honor. I could take a guess that it's accrued on account of the loan in question, that if there is a foreclosure, then those payments, if made by the servicers or if made by Fannie in its guarantee capacity, would be subject to being recovered by the structure of the trust agreement. So if in a case where it's short of foreclosures, somebody got way behind and so they had to pay the late payment penalties, I just want to know where that money ends up under the arrangements in this case, whose pocket it ends up in. I believe, but it's not really an issue that's been focused on in the case, so I can't answer you definitively. I believe it would go to – I'm not sure where it would go. It would go into the pool attributable to that loan. But to some extent, Your Honor, it's making the point that there are separate obligations under the note. That's why I asked the question. I didn't know if it ended up with the investors or if it – I don't believe that – – or whatever the contractual arrangements are where it does end up. No, I don't believe it ends up with the investors because the investors have a certain defined stream of income that they're entitled to under their certificates. I think that the interesting – to follow the arguments of the borrowers is really to go through the looking glass. And to go through the looking glass is to look at what would happen in two standard cases. The first case is that you have a mortgage which is securitized, as many mortgages in this nation are, and in which the borrower makes all of his or her payments of principal and interest every month. In that case, according to this theory, the mortgagee and the trust would have an enforceable mortgage interest, no question. So if you make your payments, the bank has a mortgage. If, however, you have a securitized mortgage and you stop making your mortgage payments, then there's a booby trap in the trust agreement. And by operation of their theory, the mortgage basically evaporates and there's no possible foreclosure. So under their theory, the very instance that is meant to be protected by the mortgage, a nonpayment of the principal and interest, evaporates as soon as that event occurs. There's really no law that leads you to that conclusion, and there should be no law to lead you to that conclusion because it's a conclusion which, to put it in the context of what the district court had, does not make a plausible claim for relief. I'd be happy to answer additional questions with regard to the UCC. I'd be happy to answer additional questions with regard to the surety ship argument, should the court reach it, as noted in our papers. It is properly considered waived, and happy to answer further questions with regard to the appropriate entry within her discretion of the dismissal with prejudice of the Hanna case. Thank you. Thank you. Yes. You didn't use much time in your opening, so that's fine. Thank you, Anna. Don't ever ask again. I'm kidding. My opponent misclassified our argument. Our argument is not about the debt. It's about using the remedy, the trigger, for foreclosure. You can't use it under Massachusetts law if the monthly installments are up to date. We're not saying nothing else about debt. Debt is what it is. You can have an unjust enrichment suit. You can sell the mortgages, thousands of remedies for collection. And our point is very simple. The trust was designed as a no-fault trust. They can't accelerate. Therefore, under Massachusetts state law, they can't foreclose. Thank you.